# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP; COMMON CAUSE; MITZI REYNOLDS TURNER; DAWN DALY-MACK; HOLLIS BRIGGS; CORINE MACK; CALVIN JONES; JOAN CHAVIS; LINDA SUTTON; and SYENE JASMIN,<br><br>          *Plaintiffs,*<br><br><br>    *vs.*<br><br>PHILIP BERGER, in his official capacity as the President Pro Tempore of the North Carolina Senate; TIMOTHY MOORE, in his official capacity as the Speaker of the North Carolina House of Representatives; DESTIN HALL, in his official capacity as the Chair of the North Carolina House of Representatives Redistricting Committee; WARREN DANIEL, in his official capacity as Co-Chair of the North Carolina Senate Redistricting and Elections Committee; RALPH HISE, in his official capacity as Co-Chair of the North Carolina Senate Redistricting and Elections Committee; PAUL NEWTON, in his official capacity as Co-Chair of the North Carolina Senate Redistricting and Elections Committee; THE NORTH CAROLINA STATE BOARD OF ELECTIONS; ALAN HIRSCH, in his official capacity as the Chair of the State Board of Elections; JEFF CARMON, in his official capacity as the Secretary of the State Board of Elections; STACY EGGERS, in his official capacity as a member of the State Board of Elections; KEVIN N. LEWIS, in his official capacity as a member of the State Board of Elections; SIOBHAN O'DUFFY MILLEN, in her official capacity as a member of the State Board of Elections; KAREN BRINSON BELL, in her official capacity as the Executive Director of the State Board of Elections; THE STATE OF NORTH CAROLINA,<br>          *Defendants.* | Case No. 1:23-cv-1104<br><br>**PLAINTIFFS' OPPOSITION TO LEGISLATIVE DEFENDANTS' MOTION TO CONSOLIDATE** |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ............................................................................................. 1

II.     STATEMENT OF FACTS ............................................................................... 2

        A.      Redistricting in North Carolina and the 2023 Plans .................................. 2

        B.      *NC NAACP* Complaint ............................................................................... 4

        C.      *Williams* Complaint ................................................................................... 6

III.    LEGAL STANDARD ...................................................................................... 7

IV.     ARGUMENT .................................................................................................. 8

        A.      The Claims and Requested Relief in this Case Are Materially Broader in
                Scope and Substantively Different than in *Williams* ................................ 8

        B.      The Possibility of Inconsistent Adjudication of Common Legal Issues Is
                Minimal, if Any. ........................................................................................ 11

        C.      Consolidation Would Not Materially Reduce Burdens on Parties or
                Witnesses, and Alternative Measures Could Provide Similar Efficiency... 15

        D.      Consolidation Would Create a Significant Risk of Prejudice to Plaintiffs. 16

        E.      The Redistricting Cases Cited by Legislative Defendants Are Inapposite
                and Do Not Support Consolidation Here. ................................................. 18

V.      CONCLUSION ............................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A/S Ludwig Mowinckles Reden v. Tidewater Const. Co.*,
559 F.2d 928 (4th Cir. 1977) ........................................................................ 7

*Allen v. Milligan*,
599 U.S. 1 (2023) ........................................................................................... 9

*Arnold v. E. Air Lines, Inc.*,
681 F.2d 186 (4th Cir. 1982) ........................................................................ 7

*In re Cree, Inc., Sec. Litig*,
219 F.R.D. 369 (M.D.N.C. 2003) ................................................................. 7

*Delegates to Republican Nat. Convention v. Republican Nat. Comm.*,
No. SACV 12-00927 DOC, 2012 WL 3239903 (C.D. Cal. Aug. 7, 2012) ................ 12

*Diagnostic Devices, Inc. v. Taidoc Tech. Corp.*,
No. 3:08-CV-559-RJC-DCK, 2009 WL 2734835 (W.D.N.C. Aug. 26, 2009) ........................................................................................ 20, 21

*Garcia v. Hobbs*,
No. 3:22-cv-5152-RSL-DGE-LJCV, 2023 WL 5822461 (W.D. Wash. Sept. 8, 2023) ............................................................................... 12

*Georgia State Conf. of the NAACP v. Georgia*,
No. 1:21-cv-5338, 2023 WL 7093025 (N.D. Ga. Oct. 26, 2023) ................................. 18

*Georgia State Conf. of the NAACP v. Georgia*,
No. 1:21-cv-5338-ELB-SCJ-SDG (N.D. Ga., Feb. 3, 2022) ......................................... 19

*Harper v. Hall*,
384 N.C. 292 (2023) ..................................................................................... 13

*League of United Latin Am. Citizens v. Abbott*,
No. EP-21-CV-00259, 2021 WL 5417402 (W.D. Tex. Nov. 19, 2021) ..................... 18

*Miller v. Johnson*,
515 U.S. 900 (1995) ..................................................................................... 10

*Miss. State Chapter, Operation Push v. Allain*,
  674 F. Supp. 1245 (N.D. Miss. 1987), *aff'd sub nom. Miss. State*
  *Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400 (5th Cir. 1991) .............. 11, 12

*Petteway v. Galveston Cnty.*,
  667 F. Supp. 3d 432 (S.D. Tex. 2023) ........................................................................ 18

*Petteway v. Galveston Cnty.*,
  No. 3:22-cv-00057 (S.D. Tex., Jun. 1, 2022) .............................................................. 18

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) ....................................................................................................... 17

*Roanoke River Basin Ass'n v. Duke Energy Progress, LLC*,
  No. 1:16-cv-607, 2018 WL 11449626 (M.D.N.C. May 8, 2018) ......................... 19, 20

*Robinson v. Ardoin*,
  86 F.4th 574 (5th Cir. 2023). .................................................................................... 19

*Robinson v. Ardoin*,
  No. 3:22-cv-211-SDD-SDJ (M.D. La., Apr. 14, 2022) .............................................. 19

*Shaw v. Reno*,
  509 U.S. 630 (1993) .............................................................................................. 10, 13

*Singleton v. Merrill*,
  No. 2:21-cv-1291-AMM, 2021 WL 5979497 (N.D. Ala. Nov. 23, 2021) ............ 19, 20

*Thornburg v. Gingles*,
  478 U.S. 30 (1986) ....................................................................................................... 9

*Williams et al. v. Hall et al.*,
  No. 1:23-cv-1057 (M.D.N.C.) ...........................................................................*passim*

**Rules**

Fed. R. Civ. Proc. 42(a) ..................................................................................................... 5

Fed. R. Civ. Proc. 42(a)(3) .............................................................................................. 16

# I.      INTRODUCTION

The North Carolina State Conference of the NAACP, Common Cause, Mitzi Reynolds Turner, Dawn Daly Mack, Hollis Briggs, Corine Mack, Calvin Jones, Joan Chavis, Linda Sutton, and Syene Jasmin (collectively, "Plaintiffs" or "*NC NAACP* Plaintiffs") oppose Legislative Defendants' Motion to Consolidate this case with *Williams et al. v. Hall et al.*, No. 1:23-cv-1057 (M.D.N.C.) (ECF No. 28).[1] Consolidation is inappropriate because this case and *Williams* differ significantly in scope and substance, consolidation as Legislative Defendants request would risk serious prejudice to both sets of Plaintiffs, and there are more appropriate alternatives, such as coordinating between the parties in discovery, that will achieve the efficiencies and reduction in costs that Legislative Defendants desire.

While both cases involve redistricting in North Carolina, the commonalities largely end there. This case, brought on behalf of Black voters, involves twelve distinct legal claims and challenges the constitutionality and legality of all three 2023 North Carolina redistricting plans—the 2023 Senate Plan, the 2023 House Plan, and the 2023 Congressional Plan. *Williams*, brought on behalf of Black and Latino voters, involves two claims challenging only the 2023 Congressional Plan. Even within the subset of claims related to the Congressional Plan, overlap between the cases is limited to two of the five congressional districts challenged in this case (*i.e.*, this case challenges Congressional Districts 1, 5, 6, 9, and 10, whereas the *Williams* complaint challenges Congressional

---

[1] The other Defendants in this case, including the North Carolina State Board of Elections and its members, and the State of North Carolina, have not filed a motion to consolidate.

Case 1:23-cv-01104-WO-LPA   Document 32   Filed 02/15/24   Page 5 of 28

Districts 1, 6, 12, and 14). This case brings statutory claims (under the Voting Rights Act) and constitutional claims under the Fourteenth and Fifteenth Amendments. *Williams* only brings constitutional claims. Significant differences between the cases crystallize upon looking beyond the superficial conclusory remarks in Legislative Defendants' Motion and instead examining the details of the two complaints.

Because of the numerous material differences between the cases, consolidation does not work here legally or practically. It would almost assuredly prolong proceedings in this case (and in *Williams*), which by extension unjustifiably jeopardizes Plaintiffs' ability to adjudicate their claims in time for the 2026 general election. Defendants' decision to delay redistricting until the last minute has already limited Plaintiffs' ability to seek relief for 2024; it would be a manifest injustice if consolidation risked yet another election conducted under voting plans that Plaintiffs believe are discriminatory and unlawful without judicial review. Such risk of prejudice heavily outweighs the very limited possibility of inconsistent adjudication (avoidable by alternatives to consolidation), or the purported burdens on Defendants that can be easily resolved through coordination on discovery, which Plaintiffs had already offered to Legislative Defendants before their Motion was filed.

For the reasons discussed above and below, the Court should deny Legislative Defendants' Motion to Consolidate (ECF No. 28).

## II.    STATEMENT OF FACTS

### A.    Redistricting in North Carolina and the 2023 Plans

The North Carolina Constitution requires the General Assembly to revise districting maps at "the first regular session convening after the return of every decennial census."

2

N.C. Const. art. II, §§ 3, 5. The U.S. Census Bureau released its 2020 Census results in August 2021, triggering North Carolina's process to draw new district maps. Compl. ¶ 64 (ECF No. 1). In November 2021, the General Assembly voted to approve new state House, state Senate, and Congressional maps. *Id.* ¶ 77. The maps were challenged and struck down by the Supreme Court of North Carolina in 2022 as violations of the North Carolina Constitution. *Id.* ¶¶ 80-82.

In 2023, a newly constituted North Carolina Supreme Court granted legislators' petition to rehear the 2022 gerrymandering case, and on rehearing, vacated and reversed its earlier ruling. *Id.* ¶ 83. In doing so, the Court granted legislators' request to redraw all three maps. *Id.*

The North Carolina Supreme Court's order allowing new legislative and congressional plans issued in April 2023, but Legislative Defendants waited nearly *five months* to begin the public redistricting process. *Id.* ¶ 84. The legislature belatedly initiated the process on September 18, 2023, when the Senate Committee on Redistricting first noticed three public meetings. *Id.* ¶ 86. After those public meetings in September, and an abbreviated and hasty public review and comment period, legislators in the state House and state Senate introduced draft plans on October 18, 2023. *Id.* ¶¶ 86-113. Within a week—on October 25, 2023—the General Assembly ratified three new redistricting plans: the 2023 Senate Plan (SB 758), 2023 House Plan (HB 898), and 2023 Congressional Plan (SB 757) (collectively, the "2023 Plans"). *Id.* ¶ 113.

3

**B.** *NC NAACP* **Complaint**

The *NC NAACP* Plaintiffs challenge all three 2023 Plans in twelve causes of action. Compl. ¶¶ 240-90. In these claims, Plaintiffs challenge each of the three 2023 Plans as a whole, as well as specific districts from each 2023 Plan, including four state Senate districts (SDs 1, 2, 7, 8), eight state House districts (HDs 4, 5, 7, 10, 12, 24, 25, 32), and five Congressional districts (CDs 1, 5, 6, 9, 10). *Id.* Plaintiffs bring statutory claims against each 2023 Plan under Section 2 of the Voting Rights Act ("VRA"), and constitutional claims against each 2023 Plan under the Fourteenth and Fifteenth Amendments of the United States Constitution. *Id.* ¶¶ 252-65, 272-80, 289-90.

Plaintiffs' claims are summarized in the chart below:

*(space intentionally left blank)*

4

| *NC NAACP* Plaintiffs' Claims | |
|---|---|
| **Claims Against 2023 Congressional Plan** | |
| <u>Constitutional Claims</u> | <u>Statutory Claims</u> |
| 1. Intentional discrimination in violation of the Fourteenth and Fifteenth Amendments: Entire 2023 Congressional Plan (Count 12) | 1. Intentional vote dilution in violation of § 2 of the VRA: Congressional District 1 (Count 10)<br><br>2. Intentional vote dilution in violation of § 2 of the VRA: Congressional Districts 5, 6, 9, & 10 (Count 11) |
| **Claims Against 2023 Senate Plan** | |
| <u>Constitutional Claims</u> | <u>Statutory Claims</u> |
| 1. Malapportionment in violation of the Fourteenth Amendment: Senate Districts 7 & 8, Senate Districts 38, 39, 40, 41 & 42 (Count 3)<br><br>2. Intentional discrimination in violation of the Fourteenth and Fifteenth Amendments: Entire 2023 Senate Plan (Count 5)<br><br>3. Racial gerrymandering in violation of the Fourteenth Amendment: Senate Districts 7 & 8 (Count 2) | 1. Intentional vote dilution in violation of § 2 of the VRA: Entire 2023 Senate Plan (Count 4)<br><br>2. Discriminatory results in violation of § 2 of the VRA: Senate Districts 1 & 2 (Count 1) |
| **Claims Against 2023 House Plan** | |
| <u>Constitutional Claims</u> | <u>Statutory Claims</u> |
| 1. Malapportionment in violation of the Fourteenth Amendment: House Districts 27, 28, 29, 30, 31, 32, 33 & 34, House Districts 71, 72, 74, 75 & 91 (Count 7)<br><br>2. Intentional discrimination in violation of the Fourteenth and Fifteenth Amendments: Entire 2023 House Plan (Count 9) | 1. Intentional vote dilution in violation of § 2 of the VRA: Entire 2023 House Plan (Count 8)<br><br>2. Discriminatory effects in violation of § 2 of the VRA: House Districts 4, 5, 7, 10, 12, 24, 25, 32 (Count 6) |

5

### C.  *Williams* Complaint

By contrast, the *Williams* Plaintiffs have challenged only the 2023 Congressional Plan. *Williams* Compl. ¶¶ 112-33, No. 1:23-1057 (ECF No. 1). And, further differentiating its action, the *Williams* complaint only includes two causes of action. *Id.* Both are constitutional claims against the 2023 Congressional Plan; the complaint does not include any statutory claims under the Voting Rights Act. *See generally id.* As to the 2023 Congressional Plan, the *Williams* complaint focuses on just four congressional districts (CDs 1, 6, 12, and 14), half of which are not among the specific congressional districts challenged in the *NC NAACP* Complaint. *Id.* ¶¶ 112-22. The *Williams* Plaintiffs' claims are summarized in the chart below:

| *Williams* Plaintiffs' Claims | |
|---|---|
| Claims Against 2023 Congressional Plan | |
| Constitutional Claims | Statutory Claims |
| 1. Intentional discrimination in violation of the Fourteenth and Fifteenth Amendments: Entire 2023 Congressional Plan (Count 2) <br><br> 2. Racial gerrymandering in violation of the Fourteenth Amendment: Congressional Districts 1, 6, 12 & 14 (Count 1) | ***None*** |
| Claims Against 2023 Senate Plan | |
| Constitutional Claims | Statutory Claims |
| ***None*** | ***None*** |
| Claims Against 2023 House Plan | |
| Constitutional Claims | Statutory Claims |
| ***None*** | ***None*** |

6

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 42(a), "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). Even if there is a common question of law or fact, district courts have discretion to decide whether to consolidate cases under Rule 42(a). Fed. R. Civ. P. 42(a) ("If actions before the court involve a common question of law or fact, the court *may* . . . consolidate the actions . . . .") (emphasis added); *A/S Ludwig Mowinckles Reden v. Tidewater Const. Co.*, 559 F.2d 928, 933 (4th Cir. 1977). A court should not consolidate multiple actions unless "the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982), *on reh'g*, 712 F.2d 899 (4th Cir. 1983) (citing 9 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2383 (1971)); *see also In re Cree, Inc., Sec. Litig*, 219 F.R.D. 369, 371 (M.D.N.C. 2003) (citing *Arnold*, 681 F.2d at 193).

## IV.  ARGUMENT

### A.  The Claims and Requested Relief in this Case Are Materially Broader in Scope and Substantively Different than in *Williams*.

As outlined above, there are numerous material factual and legal differences between this case and the *Williams* case, notwithstanding Legislative Defendants' conclusory assertion that the cases are "highly related." Mem. in Supp. at 9 (ECF No. 29). The Complaint in this case has a significantly broader scope. The most pointed distinction between the cases is that Plaintiffs here challenge the 2023 Senate Plan and the 2023 House Plan, whereas *Williams* does not challenge either. That *Williams* challenges only the 2023 Congressional Plan means that questions of law and fact associated with nine claims (Compl. Counts 1-9) involving two redistricting maps (2023 Senate Plan and 2023 House Plan) are at issue in this case that are not at issue in *Williams*.

For example, Plaintiffs' claims here regarding the 2023 Senate Plan will involve, among other things, the following factual issues: (1) the 2023 Senate Plan itself (*i.e.*, the map ratified by the General Assembly for the state Senate); (2) the public notice and review procedures (or lack thereof) provided for the 2023 Senate Plan; (3) the legislative process conducted to create the 2023 Senate Plan, including the map drawing process, introduction of the map to the General Assembly, committee review, the General Assembly's consideration of any bill amendments, and ratification; (4) the process of forming Senate Districts 1, 2, 7, 8, 38, 39, 40, 41, and 42 in particular, including, among other things, any considerations of population deviations and dilution of voting strength in such districts; (5) detailed demographic information for at least Senate Districts 1, 2, 7, and 8; (6) each of the

8

preconditions applicable to effects claims under Section 2 of the Voting Rights Act, as set forth in *Thornburg v. Gingles*, 478 U.S. 30 (1986); and (7) the "totality of the circumstances" analysis, including the multi-pronged Senate Factors analysis, required under the Voting Rights Act (*see* 52 U.S.C. § 10301(b); *Allen v. Milligan,* 599 U.S. 1 (2023)). None of these factual issues are present in the *Williams* claims.

Similarly, Plaintiffs' claims here regarding the 2023 House Plan will involve, among other things, the following factual issues: (1) the 2023 House Plan itself (*i.e.*, the map ratified by the General Assembly for the state House); (2) the public notice and review procedures (or lack thereof) provided for the 2023 House Plan; (3) the legislative process conducted to create the 2023 House Plan, including the map drawing process, introduction of the map to the General Assembly, committee review, the General Assembly's consideration of any bill amendments, and ratification; (4) the process of forming at least House Districts 4, 5, 7, 10, 12, 24, 25, 27, 28, 29, 30, 31, 32, 33 34, 71, 72, 74, 75 and 91 in particular, including, among other things, any considerations of population deviations and dilution of voting strength in such districts; (5) detailed demographic information for at least House Districts 4, 5, 7, 10, 12, 24, 25, and 32; (6) each of the *Gingles* preconditions applicable to effects claims under Section 2 of the Voting Rights Act; and (7) the "totality of the circumstances" analysis, including the multi-pronged Senate Factors analysis, required under the Voting Rights Act (*see* 52 U.S.C. § 10301(b); *Milligan,* 599 U.S. at 1). None of these factual issues are present in the *Williams* claims either.

Application of the above enumerated factual issues to the legal standards governing Plaintiffs' claims against the 2023 Senate Plan and 2023 House Plan would, of course, also

be unique to this case and not at issue in *Williams*. And Plaintiffs' requested declaratory, injunctive, and remedial relief as to the 2023 Senate Plan and the 2023 House Plan are, similarly and necessarily, unique to this case, and not at issue in *Willams*. *Compare* Compl. at pp. 85-86 (Prayer for Relief) *with Williams* Compl. at pp. 30-31 (Prayer for Relief).

The differences between this case and *Williams* pervade even the respective challenges to the 2023 Congressional Plan. As detailed above, the *NC NAACP* Plaintiffs have brought statutory claims to challenge the 2023 Congressional Plan under the Voting Rights Act that the *Williams* plaintiffs have not. And in their challenge to the 2023 Congressional Plan, the *Williams* Plaintiffs have brought a claim of racial gerrymandering in violation of the Fourteenth Amendment that the *NC NAACP* Plaintiffs have not. *Williams* Compl. ¶¶ 112-22 (Count 1). As long recognized by the Supreme Court, a racial gerrymandering claim is "analytically distinct from a vote dilution claim," *Miller v. Johnson*, 515 U.S. 900, 911 (1995) (quoting *Shaw v. Reno*, 509 U.S. 630, 652 (1993)) (internal quotation marks omitted), and thus the *Williams* Plaintiffs' pursuit of this claim will include evidentiary presentation and legal argument that is analytically distinct from the *NC NAACP* Plaintiffs' claims.

There are also geographic differences between the challenges to the 2023 Congressional Plan in this case as compared to the *Williams* case. Among the seven Congressional districts challenged in this case and the *Williams* case, only *two* of those Congressional Districts—less than 1/3—are challenged by both complaints. Plaintiffs' challenge to the 2023 Congressional Plan focuses on five specific Congressional Districts—*i.e.*, CD 1 in North Carolina's northeast, and CDs 5, 6, 9, and 10 in the Triad

area—in addition to a claim directed to the plan as a whole. *See* Compl. ¶¶ 281-88 (Counts 10 and 11), ¶¶ 289-90 (Count 12). In comparison, the *Williams* Plaintiffs bring racial gerrymandering claims—which also challenge CDs 1 and 6 but on different grounds and invoking different theories—in addition to challenging CDs 12 and 14, which the *NC NAACP* Plaintiffs do not even reference in their Complaint. Accordingly, even with respect to the 2023 Congressional Plan—the sole plan at issue in both cases—there are multiple factual and legal issues in each matter that bear little to no relevance to the other.

In sum, there is arguably only one common claim between this case and *Williams*, which is a constitutional claim for intentional discrimination in violation of the Fourteenth and Fifteenth Amendments against the 2023 Congressional Plan. Setting that claim aside, Plaintiffs here bring *eleven* additional claims directed at two other 2023 Plans and an array of specific House Districts, Senate Districts, and Congressional Districts that are not at issue in *Williams*. Simply, the claims and requested relief in this case are far broader in scope and substantively different than in *Williams*. Because of the numerous and material differences between the cases, consolidation would create significant risks of prejudicing Plaintiffs (and the *Williams* plaintiffs), while minimally (if at all) improving judicial efficiencies.

**B.    The Possibility of Inconsistent Adjudication of Common Legal Issues Is Minimal, if Any.**

A comparison of the complaint in this case and the *Williams* complaint, as detailed above, disproves Legislative Defendants' argument that consolidation "is essential to avoid the risk of inconsistent adjudications." Mem. in Supp. at 9; *see also generally id.* at 8-12

11

(Section II). There is arguably only one common claim between the cases: a constitutional claim for intentional discrimination as to the 2023 Congressional Plan. *See* Compl. ¶¶ 289-90 (Count 12); *Williams* Compl. ¶¶ 123-33 (Count 2). Therefore, at most, any risk of inconsistent adjudication would be limited to that claim. However, even as to the merely overlapping claims against specific congressional districts, the alleged risk of inconsistent adjudication is minimal for at least two reasons.

First, having a single overlapping cause of action by no means guarantees that this Court and the *Williams* Court will necessarily take the same path to resolving the cases such that there would be a conflict in the case outcomes. Unlike in *Williams*, Plaintiffs here challenge the 2023 Congressional Plan not only on constitutional grounds, but also on statutory grounds under the Voting Rights Act. *See* Compl. ¶¶ 281-90 (Counts 10-12). Because Plaintiffs have brought an action presenting both statutory and constitutional claims, the Court could conceivably decide the challenge to the 2023 Congressional Plan on statutory grounds and thereby avoid reaching Plaintiffs' constitutional claim. *See Garcia v. Hobbs*, No. 3:22-cv-5152-RSL-DGE-LJCV, 2023 WL 5822461, at *1 (W.D. Wash. Sept. 8, 2023) (finding plaintiff's constitutional challenge to redistricting plan moot in view of earlier finding of VRA Section 2 violation); *Delegates to Republican Nat. Convention v. Republican Nat. Comm.*, No. SACV 12-00927 DOC, 2012 WL 3239903, at *11 (C.D. Cal. Aug. 7, 2012) ("[T]he Court need not reach the 'serious constitutional questions' raised if the Court were to adopt Plaintiffs' interpretation of the Voting Rights Act because 'courts, particularly in [Voting Rights Act] cases, should avoid deciding constitutional issues where statutory interpretation obviates the issue.") (citation omitted);

*Miss. State Chapter, Operation Push v. Allain*, 674 F. Supp. 1245, 1261 (N.D. Miss. 1987),

*aff'd sub nom. Miss. State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400 (5th Cir.

1991). Accordingly, if this Court were to find that the 2023 Congressional Plan violates

Section 2 of the Voting Rights Act, then, under the canon of constitutional avoidance, the

Court may not need to adjudicate Plaintiffs' constitutional claim against the 2023

Congressional Plan. Such an instance would outright eliminate the risk of a conflicting

outcome with *Williams*.

But Legislative Defendants' attempt to manufacture a risk of inconsistent

adjudication suffers from an even more elementary defect: The *NC NAACP* Plaintiffs and

*Williams* Plaintiffs argue different theories of liability even in the limited areas of the 2023

Congressional Plan where the cases overlap. Legislative Defendants posit that one panel

could enjoin certain congressional districts while the other panel does not, suggesting that

this would necessarily create a conflict of law. Memo. in Supp. at 11. But there need not

be anything inconsistent about such a scenario. Where two different lawsuits challenge a

redistricting plan on different theories of liability, it is well within the competence of

reviewing courts to determine that plan is unlawful in one respect but not another. *See*

*Harper v. Hall*, 384 N.C. 292, 371 (2023) (reversing portion of prior decisions on rehearing

and holding that while state legislative plans did not violate the North Carolina

Constitution, Plaintiffs "could have brought a claim under Section 2 of the VRA"). This is

particularly true when contrasting a racial gerrymandering theory with a vote dilution

theory, which the U.S. Supreme Court has held are "analytically distinct." *Shaw*, 509 U.S.

at 652. There would be nothing inconsistent about finding in favor of liability on one theory

and against liability on a different, "analytically distinct" theory. Legislative Defendants' hypothetical erroneously elides the U.S. Supreme Court's express distinction of the theories raised by *NC NAACP* and *Williams*.

Furthermore, the *NC NAACP* Plaintiffs and *Williams* Plaintiffs challenge largely different districts in the 2023 Congressional Plan. While it is certainly possible that different panels would enjoin different districts in the 2023 Congressional Plan, it need not create a conflict. In that scenario, it is clear that Legislative Defendants would be required to redraw those specific Congressional districts that were found to be unlawful; that they would have been found liable under distinct theories challenging specific districts is of no import.[2] The only possible issue on which the two panels could even conceivably render inconsistent rulings would be the *NC NAACP* Plaintiffs' and *Williams* Plaintiffs' constitutional claims for intentional discrimination against the 2023 Congressional Plan as a whole. *See* Compl. ¶¶ 289-90 (Count 12); *Williams* Compl. ¶¶ 123-33 (Count 2). But unlike other claims raised by the *NC NAACP* Plaintiffs and *Williams* Plaintiffs, conclusions regarding liability for such intentional discrimination claims would not be district-specific, and, in any event, the commonality of two of the three judges on each case's panel mitigates the risk that the panels will arrive at inconsistent decisions as to the single common claim across the two cases.

---

[2] To the extent Legislative Defendants are worried about liability on *both* theories raised by *NC NAACP* and *Williams* as the source of a conflict, there is no reason to think that any remedial redistricting in the overlapping areas could not remedy multiple violations.

**C.    Consolidation Would Not Materially Reduce Burdens on Parties or Witnesses, and Alternative Measures Could Provide Similar Efficiency.**

Legislative Defendants' contention that consolidation would "ease the burden on the parties and witnesses," Memo. in Supp. at 12, is not supported by any specifics as to what actual volume of discovery, including fact witnesses, would overlap between this case and *Williams*, nor does it identify the relative burden that Legislative Defendants allege would be reduced by consolidation.

A closer consideration indicates that consolidation would not materially reduce burden on expert discovery either. For example, to the extent that Defendants engage the same expert witness(es) for this case and for *Williams*, such choice will not "double the costs to the taxpayers of North Carolina for duplicative expert reports and testimony," as Legislative Defendants suggest. Memo. in Supp. at 12. The reason for that is simple: the issues across the cases are not duplicative. As detailed above, Plaintiffs here have brought eleven claims that are unique to this case. Any expert witnesses that Legislative Defendants engage for this case will presumably address those issues regardless of whether they are also engaged for the *Williams* case.

Nor will Legislative Defendants face any material additional burden in pursuing discovery of Plaintiffs' experts in this case and the *Williams* case. After all, there is no requirement under consolidation that Plaintiffs in the two separate matters must engage the same experts; because each set of Plaintiffs pursues different theories of liability, it is quite likely that they will not. Thus, regardless of whether in one or two trials, Legislative Defendants' efforts in responding to Plaintiffs' experts will remain the same.

15

Additionally, consolidation is not warranted here where there are clear avenues for addressing Legislative Defendants' purported concerns of additional burden without fully consolidating both matters at trial. For example, the *NC NAACP* Plaintiffs have already represented a willingness to reasonably coordinate discovery to the extent there is any overlap identified. *See* Declaration of J. Tom Boer in Support of Plaintiffs' Opposition, ¶ 2, Exhibit 1. This could include, for example, coordinating depositions of witnesses that are common across cases to mitigate any burden on them and on counsel.[3] While the *NC NAACP* Plaintiffs extended a proposal to coordinate discovery to Legislative Defendants prior to the filing of this Motion, Legislative Defendants did not engage in discussing the proposal. *See id.*

### D. Consolidation Would Create a Significant Risk of Prejudice to Plaintiffs.

Time is of the essence in this case given the injunctive and remedial relief that Plaintiffs seek. Plaintiffs seek such relief as expeditiously as reasonably possible and at least quickly enough for remedial processes, if any, to be completed in time for the 2026 election cycle. Consolidation would strip Plaintiffs of their ability to independently navigate their case to obtain the relief they seek on a timeline that maximizes the effect of such relief. If this case is consolidated with *Williams*, then there is a high risk that timing could be disrupted.

---

[3] Although it is not necessary since the *NC NAACP* Plaintiffs have already volunteered to coordinate with Legislative Defendants and the *Williams* Plaintiffs to the extent there is potential discovery overlap, the Court could consolidate certain aspects of discovery relevant to the 2023 Congressional Plan (*e.g.*, Congressional Districts 1 and 6 which are challenged in both cases). Fed. R. Civ. Proc. 42(a)(3).

For example, case organization, logistics, and scheduling necessarily becomes more complicated and increases the risk of delay when two distinct sets of plaintiffs must coordinate with defendants as opposed to Plaintiffs here coordinating directly with Defendants. Additionally, the lack of considerable overlap between claims mean that, rather than efficiencies in trial time between the parties, each set of plaintiffs groups will have to plan for a longer trial than otherwise necessary, potentially impacting the scheduling of that trial, and guaranteeing plaintiffs' counsel will spend much of that trial time idle while evidence about unrelated claims is adduced. This all amounts to an unnecessary delay at risk to prejudicing Plaintiffs and the thousands of North Carolina voters on whose behalf they are advocating. The U.S. Supreme Court has recognized the compelling interest in ensuring equitable elections and the increasing prejudicial risks related to timing vis-a-vis election cycles. *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006).

Moreover, in view of the distinct clients and many substantive differences between the cases, as detailed above, it is entirely possible that Plaintiffs may feel compelled to pursue a different case management strategy than the plaintiffs in the *Williams* case. In a consolidated action, these differences would draw out proceedings as parties may, for example, seek extensions or even review of court orders for issues that do not overlap cases, leaving the *NC NAACP* Plaintiffs—or the *Williams* Plaintiffs, as the case may be—subject to delay arising out of issues that are not relevant to their respective case.

17

E.     **The Redistricting Cases Cited by Legislative Defendants Are Inapposite and Do Not Support Consolidation Here.**

This Court should not be misled by the redistricting cases that Legislative Defendants cite in support of consolidation. Mem. in Supp. at 8-10. These cases are procedurally and substantively distinguishable because they involve motions to consolidate supported or unopposed by all, or an overwhelming majority, of the relevant parties, or where the court consolidated actions for a specific purpose, like discovery, given the significant overlapping factual issues, but not in their entirety as sought by Legislative Defendants here.

The plaintiffs in *Petteway v. Galveston Cnty.*, 667 F. Supp. 3d 432 (S.D. Tex. 2023) filed a motion to consolidate with two other cases that similarly challenged a single-county redistricting plan almost entirely on the same grounds. Recognizing that defendants agreed to consolidation (even though they sought to delay consolidation until motions to dismiss were decided) and the motion was unopposed by the plaintiffs in the other cases, the court granted the motion. *See Petteway v. Galveston Cnty.*, No. 3:22-cv-00057 (S.D. Tex., Jun. 1, 2022), Order at 2 (ECF No. 45) (appended as Exhibit A). And in *League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00259, 2021 WL 5417402 (W.D. Tex. Nov. 19, 2021), the court consolidated six redistricting cases where all but one of the plaintiffs supported consolidation.

The court in *Georgia State Conf. of the NAACP v. Georgia*, No. 1:21-cv-5338, 2023 WL 7093025 (N.D. Ga. Oct. 26, 2023) consolidated two redistricting cases where both sets of plaintiffs argued in favor of consolidating their same constitutional challenge to the

congressional apportionment that shared factual, legal, and procedural similarities, and the record did not demonstrate specific risks of prejudice, confusion, or burden on the parties. *See Georgia State Conf. of the NAACP v. Georgia*, No. 1:21-cv-5338-ELB-SCJ-SDG, Order at 6-7 (N.D. Ga., Feb. 3, 2022) (ECF No. 40) (appended as Exhibit B). Here, Plaintiffs do not seek to consolidate the one arguably common question of law and fact (the 2023 Congressional Plan's violation of the Fourteenth and Fifteenth Amendments) in part because of each case's differing theories of liability for this claim, and in part because Plaintiffs also challenge this plan under the Voting Rights Act, unlike in *Williams*. And Plaintiffs have explained the serious risks of prejudice, confusion, *and* burden on the Plaintiffs in this case and *Williams*. *See supra*, Section IV.D.

Legislative Defendants also rely on *Robinson v. Ardoin*, 86 F.4th 574, 585 (5th Cir. 2023), Mem. in Supp. at 9, where the district court below consolidated cases upon agreeing with one set of plaintiffs' "Statement of Collateral Proceedings" averring that their case "involves subject matter that comprises a material part of the subject matter or operative facts of [related case]." *See Robinson v. Ardoin*, No. 3:22-cv-211-SDD-SDJ, Order of Consolidation at 1 (M.D. La., Apr. 14, 2022) (ECF No. 34) (appended as Exhibit C). Contrary to the Plaintiffs here, *Robinson* was another instance where the plaintiffs themselves explicitly supported consolidation.

Finally, Legislative Defendants cite two cases in which consolidation was granted for a narrow purpose, rather than for all purposes including through trial as Legislative Defendants request here. Those cases are *Singleton v. Merrill*, No. 2:21-cv-1291-AMM, 2021 WL 5979497 (N.D. Ala. Nov. 23, 2021) and *Roanoke River Basin Ass'n v. Duke*

*Energy Progress, LLC*, No. 1:16-cv-607, 2018 WL 11449626 (M.D.N.C. May 8, 2018). In *Singleton*, the court consolidated two of four cases challenging electoral maps for the limited purpose of discovery and for a hearing on injunctive relief. *Singleton*, 2021 WL 5979497, at *1-*2. Similarly, in *Roanoke River Basin*, the court consolidated actions for a finite pretrial phase for the limited purpose of discovery. 2018 WL 11449626, at *1. Notably, too, plaintiffs in *Singleton* did not object to the motion to consolidate, *Singleton*, 2021 WL 5979497, at *1, and consolidation in *Roanoke River Basin* was based on a joint motion to consolidate, *Roanoke*, 2018 WL 11449626, at *1.[4]

In contrast to the cases cited by the Legislative Defendants, their Motion is opposed by both the *NC NAACP* Plaintiffs and the *Williams* Plaintiffs, and the consolidation sought here is not merely for a narrow pretrial phase; it is to consolidate this case and *Williams* in their entirety, including through trial. Legislative Defendants cite no authority to support consolidation of materially different cases like this case and *Williams*. Plaintiffs' twelve distinct legal claims challenging all three of the 2023 Plans should not be consolidated with the *Williams* case because "although the cases meet the minimal threshold requirement of at least one 'common question of fact,' numerous significant differences also exist between

---

[4] In *Roanoke River Basin*, during the briefing of cross-motions for summary judgment in both actions, the court revisited the question of consolidation, deciding to consolidate the actions because they had the same plaintiff, the same defendant, the parties were represented by the same attorneys, the parties' expert witness disclosures were identical, and the parties' Rule 26 initial disclosures included "largely similar" witness lists. *Roanoke*, 2018 WL 11449626, at *3. *NC NAACP* and *Williams* have completely different plaintiffs, a few different defendants, and different attorneys. And at this early stage, information about potentially overlapping discovery is not yet known and thus cannot necessitate consolidation.

the two cases." *Diagnostic Devices, Inc. v. Taidoc Tech. Corp.*, No. 3:08-CV-559-RJC-DCK, 2009 WL 2734835, at *2 (W.D.N.C. Aug. 26, 2009) (also denying consolidation to avoid confusion at trial because "considerations of convenience and economy must yield to the paramount concern for a fair and impartial trial").

## V. CONCLUSION

For the foregoing reasons, Legislative Defendants' Motion to Consolidate (ECF No. 28) should be denied.

Dated: February 15, 2024

Respectfully submitted,

/s/ Hilary Harris Klein

Hilary Harris Klein

**HOGAN LOVELLS US LLP**

J. Tom Boer*
Corey Leggett*
Olivia Molodanof*
Madeleine Bech*
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Telephone: 415-374-2300
Facsimile: 415-374-2499
tom.boer@hoganlovells.com
corey.leggett@hoganlovells.com
olivia.molodanof@hoganlovells.com

Jessica L. Ellsworth*
Misty Howell*
Odunayo Durojaye*
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: 202-637-5600
Facsimile: 202-637-5910
jessica.ellsworth@hoganlovells.com

Harmony Gbe*
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: 310-785-4600
Facsimile: 310-785-4601
harmony.gbe@hoganlovells.com

*Appearing in this matter by Special
Appearance pursuant to L-R 83.1(d)

**SOUTHERN COALITION FOR
SOCIAL JUSTICE**

Jeffrey Loperfido (State Bar #52939)
Hilary Harris Klein (State Bar #53711)
Christopher Shenton (State Bar #60442)
Mitchell D. Brown (State Bar #56122)
5517 Durham Chapel Hill Blvd.
Durham, NC 27707
Telephone: 919-794-4213
Facsimile: 919-908-1525
hilaryhklein@scsj.org
jeffloperfido@scsj.org
chrisshenton@scsj.org
mitchellbrown@scsj.org

**NAACP**

Janette Louard*
Anna Kathryn Barnes Barry*
4805 Mt. Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
jlouard@naacpnet.org
abarnes@naacpnet.org

**CERTIFICATE OF SERVICE**

I certify that on February 15, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

_/s/ Hilary Harris Klein_

Hilary Harris Klein

2

## CERTIFICATE OF WORD COUNT

I certify that, pursuant to the word count feature on Microsoft Word, this brief has a word count of 5,349, which is in compliance with L.R. 7.3(d).


    /s/Hilary Harris Klein

Hilary Harris Klein