# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHAUNA WILLIAMS, et al., | |
| *Plaintiffs*, | |
| v. | Civil Action No. 23 CV 1057 |
| REPRESENTATIVE DESTIN HALL, in his official capacity as Chair of the House Standing Committee on Redistricting, et al., | |
| *Defendants*. | |
| _____ | |
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, et al., | |
| *Plaintiffs*, | |
| v. | Civil Action No. 23 CV 1104 |
| PHILIP BERGER, in his official capacity as the President Pro Tempore of the North Carolina Senate, et al., | |
| *Defendants*. | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF NAACP PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER OVER THE IDENTITIES OF NON-PARTY MEMBERS OF THE ORGANIZATIONAL PLAINTIFFS</u>

Over six decades ago, the Supreme Court recognized that "compelled disclosure of affiliation with groups engaged in advocacy may constitute" a "restraint on freedom of association" because of "the vital relationship between freedom to associate and privacy in one's associations." *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958). It held that the "[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *Id.*

These principles remain true today, *see Ams. For Prosperity Found v. Bonta*, 594 U.S. 595, 606 (2021) (citing *NAACP*), and in the matter at hand, in which the North Carolina NAACP and Common Cause, along with six individuals[1] (the "NAACP Plaintiffs"), challenge three voting maps passed in 2023 by the North Carolina General Assembly as racially discriminatory, dilutive of Black voting power, racial gerrymanders, and denying equal voting power in violation of the Fourteenth and Fifteenth Amendments and the Voting Rights Act.

NAACP Plaintiffs respectfully seek a protective order from the Court over the identities of the non-party members of the North Carolina NAACP and Common Cause (together, the "Organizational Plaintiffs") who live in the challenged districts and whose membership forms the basis of Organizational Plaintiffs' associational standing to bring this action. In support of their assertion of associational standing, the Organizational Plaintiffs have each specified with particularity in the Complaint and in their discovery

---

[1] Mitzi Reynolds Turner, Dawn Daly-Mack, Hollis Briggs, Corine Mack, Calvin Jones, Linda Sutton, and Syene Jasmin.

responses the specific districts and counties in which they have verified members and have produced to Legislative Defendants declarations from organizational leaders made under oath setting forth how and where members were located. By contrast, Legislative Defendants have not yet deposed the Organizational Plaintiffs to test the allegations and discovery produced related to associational standing (waiting until the date of this filing, one month before the close of discovery, to request those depositions); instead, Legislative Defendants first insisted upon receiving the specific identifies of the non-party members living in the challenged districts so that they can depose them. This drastic escalation is especially surprising given that Legislative Defendants waited until September 26, 2024, to notify Plaintiffs—for the first time in this litigation—of their intent to challenge the organizational plaintiffs' associational standing. In a good faith effort to resolve Defendants' request for more information substantiating associational standing, NAACP Plaintiffs have provided declarations from the Organizational Plaintiffs on standing and further offered to produce the voting records of specific members in the identified districts evidencing their self-designated race, party affiliation, city, county, zip code, voting districts, and voting history, and redacted of any personally identifying information. -

Legislative Defendants declined this offer via email on the date of this filing, asserting instead that they seek to depose non-party members of the Organizational Plaintiffs. They also asserted they would continue to oppose NAACP Plaintiffs' assertion of First Amendment privilege, and would seek future relief on the issue, including objecting to the evidence NAACP Plaintiffs have indicated they intend to use to establish standing here and even seeking to delay trial.

3

Legislative Defendants' pursuit of discovery from non-party members of the Organizational Plaintiffs, without first availing themselves of any alternative methods to interrogate plaintiffs' basis for standing (including deposing the Organizational Plaintiffs themselves), indicates that their request for individualized membership information and depositions is not proportionate to the needs of the case nor intended to satisfy themselves of Plaintiffs' standing, but rather a tactic to impose an undue and oppressive burden on the Organizational Plaintiffs and their members. These measures infringe upon established First Amendment protections and are not condoned by the Federal Rules of Civil Procedure. Accordingly, NAACP Plaintiffs respectfully request that the Court enter a protective order providing that NAACP Plaintiffs need not provide the identities of non-party members of the Organizational Plaintiffs in response to Legislative Defendants' Request for Interrogatory No. 4, that non-party members of the Organizational Plaintiffs who are not otherwise disclosed as witnesses in this matter may not be deposed, and to grant such other relief as it deems necessary and appropriate.

## BACKGROUND

NAACP Plaintiffs filed their Complaint on December 19, 2023, seeking a declaratory judgment that North Carolina's 2023 Senate, House, and Congressional plans violate the Voting Rights Act and the Fourteenth and Fifteenth Amendments, a permanent injunction barring Defendants from holding elections under the 2023 plans, and an order requiring a remedial redistricting process. NAACP Complaint, Dkt. 1 at 85-86, Civil Action No. 23 CV 1104 (M.D.N.C. Dec. 19, 2023) (hereafter "*NAACP* Dkt."). Legislative Defendants did not move to dismiss the Complaint, and instead answered the Complaint

on February 12, 2024. *NAACP* Dkt. 31. Legislative Defendants did not raise lack of standing as an affirmative defense in their Answer. *See NAACP* Dkt. 31 at 38–39. The parties filed a Joint Rule 26(f) report on April 23, 2024, proposing to commence written discovery on April 22, 2024. Dkt. 44 at 2. On May 22, 2024, the Court approved an Amended Joint Rule 26(f) Report with the April 22 commencement date and requiring all discovery, except for limited supplements relating to the 2024 General Election, to be closed by November 4. Dkts. 46, 47.

NAACP Plaintiffs served written discovery on Legislative Defendants two days after the opening of discovery, on April 24, 2024. Klein Decl. ¶ 4. Legislative Defendants waited seven weeks after written discovery opened, until June 11, 2024, to serve any discovery requests on NAACP Plaintiffs. *Id.* ¶¶ 5–6, Ex. A. In their Interrogatory Request 4, Legislative Defendants requested that Organizational Plaintiffs identify the members of their organization living in each challenged district. *Id.* ¶ 7, Ex. A at 9–10. NAACP Plaintiffs timely served initial discovery responses on July 11, 2024, objecting to Legislative Defendants' request for membership names on First Amendment grounds and asserting that disclosure "would chill protected First Amendment speech and activities." *Id.* ¶¶ 8–9, Ex. B at 11. Plaintiffs further responded to the request by identifying the specific districts and counties in which each Organizational Plaintiff had identified members who identify as Black or African American and are registered voters. *Id.* ¶ 9, Ex. 11–15. Plaintiffs also offered to meet and confer about any objection or response. *Id.* ¶ 9, Ex. B at 26.

Legislative Defendants raised no concerns about NAACP Plaintiffs' written discovery responses for approximately two months. *Id.* ¶ 12. Legislative Defendants also did not request or notice *any* depositions for any Individual or Organizational Plaintiffs, and only noticed such depositions on the date of this filing and just one month before the close of a discovery period that opened in May. *Id.* ¶ 29, Ex. E (10/2/2024 Email from K. McKnight). Since receiving Legislative Defendants' discovery requests, Plaintiffs have worked to diligently collect and review thousands of potentially responsive documents from clients, beginning rolling productions on August 19, 2024, and have produced over 1,800 pages of documents so far. *Id.* ¶ 11.

Eight weeks after receiving NAACP Plaintiffs' responses to their discovery requests, on September 5, 2024, Legislative Defendants first conveyed concerns with NAACP Plaintiffs' First Amendment privilege assertions in a letter. *Id.* ¶ 12, Ex. C. Legislative Defendants claimed that they were prejudiced by NAACP Plaintiffs' objections to providing membership information and disputed this assertion of privilege. *Id.* ¶ 13, Ex. C at 3. In a responsive letter dated September 20, 2024, NAACP Plaintiffs noted that they had already disclosed several individuals who have standing for the claims asserted, including individual plaintiffs who are also members of the North Carolina NAACP and/or Common Cause, and that they would provide declarations from the Organizational Plaintiffs providing evidence that specific members in all challenged areas had been located. *Id.* ¶ 14, Ex. D at 2–4. NAACP Plaintiffs requested again to meet and confer on the issue. *Id.* ¶ 14, Ex. D at 3–4.

6

Legislative Defendants responded five days later, on September 25, 2024, to schedule time to meet the following day. *Id.* ¶ 17, Ex. E (9/25/2024 Email from E. Prouty). NAACP Plaintiffs confirmed and provided via email an affidavit from North Carolina NAACP President Deborah Dicks Maxwell concerning membership information and disclosure. *Id.* ¶¶ 17–18, Exs. E (9/25/2024 Email from H. Klein) and Ex. F. In her declaration, President Maxwell highlighted the reasons that the NAACP, both nationally and in North Carolina, do not publicly disclose membership lists and the risk that disclosure of membership information would present to members and the organization. *Id.* ¶ 18, Ex. F ¶¶ 13–14. She also confirmed that there exists at least one member in specific districts and counties in North Carolina, and confirmed these members were registered voters self-identifying as Black or African American. *Id.* ¶ 18, Ex. F ¶ 15.

The parties met virtually on September 26, 2024. *Id.* ¶ 19. Legislative Defendants asserted that they would experience prejudice if the NAACP Plaintiffs did not disclose membership identities by October 4, 2024, because they intended to notice and conduct depositions of non-party members before the close of discovery. *Id.* ¶ 20. NAACP Plaintiffs made clear that they objected to the October 4 deadline, emphasizing that Legislative Defendants waited to issue discovery requests in this matter and then nearly two months to raise objections to Plaintiffs responses. *Id.* ¶ 22. NAACP Plaintiffs also offered to provide voting records of members, indicating which district they live in and demographic and voting information, but with personally identifying information redacted. *Id.* ¶ 22. This was rejected by Legislative Defendants. *Id.* When NAACP Plaintiffs asked what specific information would be sought in the depositions of non-party members, Legislative

7

Defendants were unable to specify other than they would ask about "anything relevant to standing." *Id.* ¶ 20.

Legislative Defendants' positions were confirmed in a letter to NAACP Plaintiffs the following day. *Id.* ¶ 20, Ex. G. NAACP Plaintiffs sought one more time to reach an agreement, offering on October 2 to provide redacted voting records and organizational depositions in exchange for Legislative Defendants agreeing not to depose non-party members who were not already noticed in disclosures as potential witnesses in the matter, and agreeing not to call any such members unless ordered by the Court to establish standing, and in that case limiting testimony to establishing standing and no other topics. *Id.* ¶ 24, Ex. E (10/2/2024 Email from H. Klein). NAACP Plaintiffs also attached a second affidavit from the North Carolina NAACP, addressing the request to depose non-party members, and an affidavit from the Executive Director of Common Cause, also addressing the impact of the discovery requests on the organization and the location of specific members in challenged districts and counties. *Id.* ¶¶ 25–26, Exs. H and I.

After additional correspondence, Legislative Defendants declined NAACP Plaintiffs' proposal, conveyed an intent to depose the Organizational Plaintiffs, and made clear they agreed the parties have sufficiently conferred on the issue before seeking guidance from the Court. Klein Decl., Ex. E (10/4/2024 Emails from K. McKnight).

## ARGUMENT

### I. Legal Standard

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a

8

deposition, in the court for the district where the deposition will be taken." Fed. R. Civ. P. 26(c)(1). The party seeking the protective order must confer, or attempt to confer, in good faith with other affected parties. *Id.* A protective order may be granted for good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* The moving party bears the burden of demonstrating good cause. *Roanoke River Basin Ass'n v. Duke Energy Progress, LLC*, No. 1:16CV607, 2018 U.S. Dist. LEXIS 247444, at *5 (M.D.N.C. May 25, 2018). "[I]n determining good cause, a court will balance the interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production." *Id.* (citing *UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 191 (M.D.N.C. 1988)).

A party seeking to protect membership information on First Amendment grounds must first make a prima facie showing that "demonstrate[es] an objectively reasonably probability that compelled disclosure of the information sought" will chill First Amendment associational rights. *Id.* at *9. "[A]bsolute certainty" that the members' First Amendment rights will be chilled is not required. *Id.* Once a party has made a prima facie showing:

> "the Court engages in a balancing test where the party seeking disclosure has the burden of proving that the information sought is of crucial relevance to its case; that the information is actually needed to prove its claims; that the information is not available from an alternative source; and that the request is the least restrictive way to obtain the information."

*Id.* (internal quotations and citations omitted).

9

II.     The First Amendment protects the member identities sought here.

"The United States Constitution guarantees a right to association to engage in activities protected by the First Amendment, such as speech, assembly, and petition for the redress of grievances," and "these First Amendment protections apply in the context of discovery orders." *Pulte Home Corp. v. Montgomery Cty. Maryland*, No. GJH-14-3955, 2017 U.S. Dist. LEXIS 43153, 2017 WL 1104670, at *3 (D. Md. Mar. 24, 2017) (*unpublished*) (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984), 104 S. Ct. 3244, 82 L. Ed. 2d 462; *NAACP v. Alabama*, 357 U.S. at 462–63; *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987)).

In the context of discovery, the right to associate applies "as a qualified privilege against disclosure of information when the party asserting the privilege demonstrates that the disclosure would likely impair the associational activities of the group." *Roanoke River Basin*, 2018 U.S. Dist. LEXIS 247444, at *6 (citation omitted). Disclosing individuals' association with particular groups risks "expos[ing] members to harassment, threats, and reprisals by opponents of those organizations" causing individuals to "choose to disassociate themselves from a group altogether rather than face such backlash." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 626 (2021). "Acknowledging that risk," the Supreme Court has observed that "privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *Id.* (citing *NAACP* v. *Alabama ex rel. Patterson*, 357 U.S. at 462). Importantly, disclosure requirements can chill association

10

"even if there is no disclosure to the general public." *Id.* at 616 (internal quotations and alternations omitted).

The North Carolina NAACP keeps membership lists and information "very protected from public disclosure," with access "strictly regulated even within the NAACP." Klein Decl., Ex. F (Maxwell Decl.) ¶ 13. "This is due to privacy concerns and the risk of retaliation against members following a longstanding history of loss of life and livelihood as retaliation for civil rights activism in the South," which includes the "bombing of a former North Carolina NAACP President's home." *Id.* Protection of membership information is "crucial to the NAACP's ability to protect its members from retaliation[,] harassment, and to maintain its membership and also recruit members in the future." *Id.* Current State Conference President Deborah Dicks Maxwell is "aware of current members that would fear they are personally at risk if their membership in the NAACP were publicly disclosed without their consent or knowledge," and believes that if the organization were forced to disclose membership information, "this would have a severe adverse impact on its ability to maintain current members and recruit new members in the future." *Id.* ¶¶ 13–14. "Because the work to achieve [the North Carolina NAACP's] core missions is largely carried out through [its] members, this in turn would severely diminish [its] ability to carry out those activities central to our objectives and mission." *Id.* ¶ 14.

President Maxwell also expressed concerns that the depositions of non-party members would have a "negative adverse impact on people's willingness to affiliate with the North Carolina NAACP," especially since members include "individuals who are already marginalized within their communities, and who have experienced adverse

11

treatment because of their race." Klein Decl. ¶ 25, Ex. H (Second Maxwell Declaration) ¶¶ 2–3. She cites recent incidents of racially-motivated arson against prominent members of the organization, threatening phone calls against a local branch, and death threats against past presidents, among other experiences as reasons specific members could face "significant criticism" or "risk for being associated with a social justice civil rights organization." *Id.* at ¶ 3. She also notes that many members, who are all volunteers, are also low-income and work full time, and that depositions would impose a significant financial and time burdens. *Id.* ¶ 4. As a result, depositions would likely "be seen as a harassment intended to dissuade them from continuing their affiliation with the organization." *Id.* These issues would compound the severe impact on the North Carolina NAACP's ability to meet organizational goals. *Id.*

Common Cause also keeps its membership list and member information confidential due to "privacy concerns [and] the risk of retaliation." Klein Decl., Ex. I (Phillips Decl.) ¶ 13. Current Executive Director Bob Phillips believes that "the specific identification of our members would place their safety and privacy in jeopardy" due to a "current political climate [in which] private individuals are finding themselves increasingly vulnerable to public attacks, conflicts, and doxing." *Id.* He notes the current "chilling effect" community members experience in their desire to be affiliated even with nonpartisan organizations that engage in civic issues, including members who have "expressed a fear of the impact that public identification would have on their livelihood." *Id.*

12

These concerns are well founded. Risks of disclosure "are heightened in the 21st century and seem to grow with each passing year, as anyone with access to a computer [can] compile a wealth of information about anyone else, including such sensitive details as a person's home address or the school attended by his children." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. at 616-17 (internal quotations and citations omitted). The risk of having members deposed would likewise present an "insurmountable barrier to participation" with Common Cause for many individuals, causing current members to leave and deterring new members from joining, with a "severe" impact on the organization. Klein Dec., Ex. I (Phillips Decl.) ¶ 14.

The declarations demonstrate an almost certainty that disclosing membership identities would chill First Amendment associational rights of both the Organizational Plaintiffs and their members, and thus satisfy the prima facie showing of an "objectively reasonable probability" of such chilling. *Roanoke River Basin*, 2018 U.S. Dist. LEXIS 247444, at *9.

All other factors relevant to the Court's balancing test, *id.*, weigh in favor of protecting member identities against disclosure here. Specifically, Legislative Defendants cannot prove the information sought is of "crucial" relevance to the case, "actually needed" to prove its claims, *id.*, given they have failed to yet depose organizational representatives to test the methods used to identify members in specific districts. They cannot claim that information substantiating that individual members live in challenged districts are "not available from an alternative source," *id.*, given the obvious (and offered) alternative means for substantiating the relevant qualifications of these specific members through testimony

of the Organizational Plaintiffs accompanied with redacted voting records providing specific demographic, residency, and voting histories of those members. For the same reasons, Legislative Defendants cannot claim that their request for the identities of specific members is "the least restrictive way to obtain the information" given the alternative methods of providing detailed membership information that will protect both the Organizational Plaintiffs and their members' First Amendment rights to associate. *Id.*; *Cf. Marshall v. Stevens People & Friends for Freedom*, 669 F.2d 171, 177 (4th Cir. 1981) (affirming district court's denial of compelled disclosure of non-party employees on First Amendment grounds).

For these reasons, NAACP Plaintiffs' request for a protective order should be granted on First Amendment grounds.

III.    <u>Legislative Defendants' request is disproportionate to the needs of this case given that Defendants have available alternative avenues to test the basis of associational standing without violating the First Amendment.</u>

Federal Rule of Civil Procedure 26(b)(1) limits the scope of permissible discovery to any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs to the needs of the case." In considering what is proportional, the Court considers (as relevant here) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Pr. 26(b)(1). Rule 26 also provides a court *must* limit the frequency or extent of discovery otherwise allowed by the rules or by local rule if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

14

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. Pr. 26(b)(2)(C).

When it comes to requests implicating non-parties, "[b]ystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery" because non-parties have a "different set of expectations from the parties themselves." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (internal quotations and citations omitted). When information is requested concerning non-parties, courts should consider the burden that might impose to non-parties by "invading privacy or confidentiality interests." *Id.* at 189 (affirming denial of nonparty subpoena where issuers "failed to explain why the same or similar information could not be had from better, alternative sources" and the request "imposed cognizable burdens" on nonparties to the litigation). As a general principle, nonparties "should not be drawn into the parties' dispute unless the need to include them outweighs the burdens of doing so, considering their nonparty status." *Id.* at 194.

Here, the names of specific members are not required for NAACP Plaintiffs to substantiate associational standing, nor are they required for Legislative Defendants to adequately test that basis for associational standing given the other available methods of testing that basis, which Defendants have failed to explore to date.

15

*A. NAACP Plaintiffs need only show that individual members will suffer requisite harm to their voting rights to prove associational standing here.*

"It is common ground that the respondent organizations can assert the standing of their members." *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009). "Generalized harm" alone will not support standing, *id.*, and instead an organizational plaintiff must establish that the challenged action "threatens imminent and concrete harm to the interests of their members," *id.* at 595. In *Summers*, the Supreme Court rejected a theory of associational standing based on a "statistical probability" that some members of the organizational plaintiff were threatened, and instead required plaintiff to establish "that at least one identified member had suffered or would suffer harm." *Id.* at 497–98.

Importantly, the Court in *Summers* did not consider or decide whether establishing that individual members would suffer harm would require disclosing those members specific names publicly when an organization asserted a First Amendment privilege over that information. The decision does not discuss the First Amendment, and in that matter, the organizational plaintiff had provided many affidavits from members that the Court found, for various reasons, did not show a concrete or imminent harm. *See generally Summers*, 555 U.S. 488.

Furthermore, subsequent courts have rejected the argument that *Summers* "created a blanket rule that a Plaintiff must allege the identity of individual members." *Or. Nat. Desert Ass'n v. United States Dep't of the A.F.*, No. 2:24-cv-00145-HL, 2024 U.S. Dist. LEXIS 149175, at *9 (D. Or. Aug. 7, 2024) (holding that the "lack of specifically identified individual members" in the complaint did not warrant dismissal where the allegations

16

"make it relatively clear, not merely speculative, that one or more of Plaintiffs' members" would have standing). *See also New York v. United States DOC*, 351 F. Supp. 3d 502, 606 n.48 (S.D.N.Y. 2019) (holding plaintiffs had established standing for some claims without naming specific members), *rev'd in part on other grounds by Dep't of Com. v. New York*, 588 U.S. 752 (2019). As the district court in *New York* observed:

> It would overread the word "identified" in that context to require an organization to *name* the member who might have standing in his or her own right. In the first place, such specific identifying information is often unnecessary to determine whether a person would have Article III standing. For example, as in this case, whether a person will suffer a loss of political representation depends on the facts of his or her existence and residence within a particular jurisdiction, but not on his or her name. Where those (or other relevant) facts are proved, a court need look no further to conclude that the organization has members who would have standing to pursue a particular claim in their own right. Moreover, to hold that Article III requires an organization to name those of its members who would have standing would be in tension with one of the fundamental purposes of the associational standing doctrine—namely, protecting individuals who might prefer to remain anonymous.

*Id.* (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. at 458–60, and *Food and Commercial Workers*, 517 U.S. at 551–52).

In the voting context, "voters who allege facts showing disadvantage to themselves as individuals have standing to sue," *Baker v. Carr*, 369 U.S. 186, 206 (1962), so long as their claimed injuries are "distinct from a 'generally available grievance about the government,'" *Gill v. Whitford*, 585 U.S. __, 138 S. Ct. 1916, 1923 (2018) (quoting *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam)). "To the extent the plaintiffs' alleged harm is the dilution of their votes, that injury is district specific." *Whitford*, 138 S. Ct. at 1930.

Here, the Organizational Plaintiffs need only establish that at least one member in the challenged area is a "member of a minority whose voting strength was diluted" and a registered voter residing in the area "directly affected by the allegedly illegal voting scheme" to assert claims under Section 2 of the Voting Rights Act, and intentional discrimination and racial gerrymandering claims under the Fourteenth and Fifteenth Amendments. *See Perry-Bey*, 678 F. Supp. 2d at 363–65 (describing standing for Voting Rights Act Section 2 claims), 362 ("[I]f Plaintiff satisfies the constitutional standing requirements for a vote dilution claim under the Voting Rights Act, she also satisfies the constitutional standing requirements for a vote dilution claim under the Fourteenth and Fifteenth Amendments."); *Holloway v. City of Va. Beach*, 531 F. Supp. 3d 1015, 1028 (E.D. Va. 2021) (holding that because Plaintiffs both identified as Black and were part of the minority community that had allegedly suffered a dilution of their votes, they had constitutional standing); *see also Goldman v. Youngkin*, Civil Action No. 3:22CV789 (RCY), 2023 U.S. Dist. LEXIS 28819 at *20 (E.D. Va. Feb. 21, 2023).

For malapportionment claims under the Fourteenth Amendment, organizational plaintiffs need only establish they have specific members in overpopulated districts, such that the "particular composition of [their] own district, which causes [their] vote . . . to carry less weight than it would in another, hypothetical district.'" *Goldman v. Brink*, 2022 U.S. Dist. LEXIS 101081, at *22 (E.D. Va. 2022) (citing *Gill*, 138 S. Ct. at 1930–31).

Organizational Plaintiffs here can therefore satisfy the requisite showing for associational standing in all claims by evidencing that specific members have been identified in specific challenged districts, and that these members identify as Black and are

18

registered to vote in those areas. The organizational testimony describing the verification that specific members reside in challenged districts, and that those members are registered to vote and self-identify as Black or African American on their voting records, as well as the redacted voting records for these members substantiating their registration information, is more than sufficient to meet this burden. *See* Klein Decl., Ex. F (Maxwell Declaration), Ex. I (Phillips Declaration), Ex. J (example redacted voting record). The availability of this evidence will both make it clear which districts members have members that will suffer harm and allow Legislative Defendants to question the organization on the methods used to identify specific members. Legislative Defendants can also review the redacted voting records to ensure they in fact establish residence in challenged areas and evidence registered voters self-identifying as Black or African American.

The availability of this evidence makes the disclosure of specific member names to Defendants unnecessary, disproportionate, and unduly burdensome. "Where it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by defendant's action," and "where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury," there is "no purpose to be served by requiring an organization to identify by name the member or members injured." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015), *overruled on unrelated grounds of organizational, not associational, standing by Ariz. All. For Retired Ams. V. Mayes*, 2024 U.S. App. LEXIS 23963 (9th Cir. Sept. 20, 2024). To date, Legislative Defendants have failed to depose either Organizational Plaintiff, waiting until the day of this filing (and one month before the close of a discovery

19

period that opened in May) to notice any organizational deposition in order to assess or scrutinize the information available to them; they have otherwise failed to articulate what additional information could be discovered if member names were disclosed and those members were subject to questioning, instead asserting a general need to depose members on "anything relevant to standing" as well as "any matter relevant" to the case. Klein Decl. ¶ 20. This is plainly unnecessary in light of the other evidence of associational standing offered, and Legislative Defendants "have not persuasively shown that they are unable to understand or respond to [plaintiff's] claims" to justify the incredible burden on non-parties and the Organizational Plaintiffs they seek to impose. *Rights Cal. v. Cty. of Alameda*, No. 20-cv-05256-CRB, 2021 U.S. Dist. LEXIS 11553, at *20–22 (N.D. Cal. Jan. 21, 2021) (denying motion to dismiss claim for lack of standing while granting motion in part on unrelated grounds); *see also Or. Nat. Desert Ass'n v. United States Dep't of the A.F.*, No. 2:24-cv-00145-HL, 2024 U.S. Dist. LEXIS 149175, at *9 (D. Or. Aug. 7, 2024).

Courts have denied requests for the naming of specific organizational members in this precise circumstance, concerning the invocation of associational standing in a redistricting case. In *Nairne v. Ardoin*, the Middle District of Louisiana denied a motion to compel the list of members in challenged districts in a redistricting matter because the organization had already provided sufficient information to establish associational standing and Defendants had not challenged standing. No. 22-178-SDD-SDJ, 2023 U.S. Dist. LEXIS 159116, at *3–6 (M.D. La. Sep. 8, 2023). The district court thus found "any additional information concerning the identities of the NAACP's members is not proportional to the needs of this case and therefore beyond the scope of permissible

discovery." *Id.* at *6. Much like the Defendants in *Ardoin*, Legislative Defendants have not yet challenged NAACP Plaintiffs' standing in this case: they filed no motion to dismiss, and they did not assert lack of standing in their Affirmative Defenses. *See NAACP* Dkt. 31 at 38–39.

Even if such a challenge did come, the court must do "everything possible to protect the identities of the organization's members, highlighting the importance of the First Amendment's associational privilege." *Id.* at *4. Here, that would include protecting specific member names when other evidence substantiating these members' voting eligibility, race, and residency are available.

This is exactly what another district court recently determined in a different federal court redistricting challenge. *Common Cause Fla. v. Byrd*, 2024 U.S. Dist. LEXIS 54503 (N.D. Fla. Mar. 27, 2024*)*. In *Byrd*, Defendants challenged the organizational plaintiffs' standing throughout the redistricting matter, and the Court still held that the testimony of organizational representatives sufficed to establish associational standing without requiring disclosure of specific member names. *Byrd*, 2024 U.S. Dist. LEXIS 54503, at *61–63. Specifically, an NAACP representative testified to reviewing a list of members living in the challenged Congressional districts and affirming their membership and residency. *Id.* The Court rejected arguments that a compiled membership needed to be produced, especially where the NAACP declined disclosure due to a history of violence and threats. *Id.* It similarly held that Common Cause's representative had credibly testified that Common Cause had members who are registered voters in each challenged congressional district. *Id.* at *72.

21

The same conclusion is warranted here, where the Organizational Plaintiffs have provided testimony from organizational leadership substantiating that specific members are impacted in specific challenged areas and offered the redacted voting records substantiating that these members are eligible voters, self-identify and Black and African American, and are registered in the requisite geographic areas.[2]

## CONCLUSION

Based on the foregoing, and for the reasons set forth in the accompanying Memorandum of Law, NAACP Plaintiffs respectfully request that the Court enter a protective order providing that NAACP Plaintiffs need not disclose the names (or other personally identifying information) of non-party members of the Organizational Plaintiffs in response to Legislative Defendants' Request for Interrogatory No. 4, and to grant such other relief as it deems necessary and appropriate.

If the Court were to find, upon a challenge to standing or as part of its own jurisdiction analysis, that that the disclosure of specific member identities is required,

---

[2] For similar reasons, the Federal Rules of Civil Procedure also prohibit the deposition of non-party members under these circumstances, as they prohibit any discovery request made to harass or cause unnecessarily delay and require counsel to avoid imposing undue burden or expense on non-parties. *See* Fed. R. Civ. P. 26(g)(1)(B)(ii), 45(d)(1). *See also Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in the Rule 45 inquiry.); *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (When organizational parties rely on their members for associational standing, "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit[.]"), *superseded by statute on other grounds as stated in United Food & Commer. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544 (1996); Klein Decl., Ex. H ¶¶ 2-4 and I ¶ 14 (setting forth the impact and burden depositions of non-party members would impose on the Organizational Plaintiffs and their members).

NAACP Plaintiffs respectfully request that that information be provided *in camera* to the Court, and that NAACP Plaintiffs be afforded two weeks to receive permission to make such an *in camera* disclosure and further be permitted, in the alternative, to withdraw an assertion of standing in specific districts if no members provide that permission. NAACP Plaintiffs further respectfully request that the Court direct that depositions of non-party members who were not otherwise disclosed as witnesses in this matter be prohibited. In the alternative, NAACP Plaintiffs respectfully request that, if the Court is inclined to require any disclosure of membership names, it make clear whether or not depositions of those non-party members would be allowed so that the Organizational Plaintiffs can accurately convey this information to non-party members when seeking their permission to disclose any membership information, as the Organizational Plaintiffs do not intend to disclose any membership information without the permission of those members in this matter.

Dated: October 4, 2024

Respectfully submitted,

*/s/ Hilary Harris Klein*
Hilary Harris Klein

**HOGAN LOVELLS US LLP**

J. Tom Boer*
Olivia Molodanof*
Madeleine Bech*
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Telephone: 415-374-2300
Facsimile: 415-374-2499
tom.boer@hoganlovells.com
olivia.molodanof@hoganlovells.com

**SOUTHERN COALITION FOR SOCIAL JUSTICE**

Jeffrey Loperfido (State Bar #52939)
Hilary Harris Klein (State Bar #53711)
Christopher Shenton (State Bar #60442)
Mitchell D. Brown (State Bar #56122)
Lily Talerman (State Bar #61131)
5517 Durham Chapel Hill Blvd.
Durham, NC 27707
Telephone: 919-794-4213
Facsimile: 919-908-1525

23

Jessica L. Ellsworth*
Misty Howell*
Odunayo Durojaye*
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: 202-637-5600
Facsimile: 202-637-5910
jessica.ellsworth@hoganlovells.com

Harmony Gbe*
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: 310-785-4600
Facsimile: 310-785-4601
harmony.gbe@hoganlovells.com

*Appearing in this matter by Special
Appearance pursuant to L-R 83.1(d)

hilaryhklein@scsj.org
jeffloperfido@scsj.org
chrisshenton@scsj.org
mitchellbrown@scsj.org
lily@scsj.org

24

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.3(d), I hereby certify that this brief contains 5,974 words

as counted by the word count feature of Microsoft Word.

/s/ Hilary Harris Klein
Hilary Harris Klein

**CERTIFICATE OF SERVICE**

I certify that on October 4, 2024, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to all

counsel of record.

/s/ Hilary Harris Klein
Hilary Harris Klein
